# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

**AMANDA KILGORE,**
*On Behalf of R.L.K., A Minor Child*                                       **PLAINTIFF**

**v.**                                                **CIVIL ACTION NO. 1:22-cv-142-JMV**

**KILOLO KIJAKAZI,**
*Commissioner of Social Security*                                           **DEFENDANT**

## ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for review[1] of the Commissioner's March 2022 decision denying her claim on behalf of her newborn/young infant son, R.L.K (currently an older infant toddler), for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3). For the reasons below I find the decision is affirmed.

---

[1] The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

On this appeal, Plaintiff makes the following argument: the Appeals Council erred when it found that an Autism Spectrum Disorder ("ASD") evaluation report from University of Mississippi Medical Center dated May 2, 2022 (approximately one month after the Administrative Law Judge ("ALJ") decided Plaintiff's case on March 28, 2022), and which formally diagnosed the infant claimant as having ASD, does not relate to the period at issue. Plaintiff argues, instead, that the report, while new, does relate to the period at issue, and that there is also a reasonable probability that the report would have changed the outcome of the decision.

By way of background, Plaintiff protectively filed an application in the present matter on August 13, 2020. Plaintiff alleged that R.L.K. was primarily disabled due to physical impairments, such as hemangioma, acid reflux, nephrotic syndrome, smaller right kidney, high blood pressure, and aspirating when swallowing (Doc. 7, p. 177). She also alleged a speech delay, and reported that R.L.K. did not cuddle, play games (e.g., "peek-a-boo"), say simple words, respond to himself in a mirror, or make various babbling sounds (Doc. 7, pp. 173, 177).

The application was denied at the initial and reconsideration levels and Plaintiff filed a timely request for a hearing. The ALJ issued an Unfavorable Decision in this cause on March 28, 2022. The Appeals Council issued an Order dated August 4, 2022, which affirmed the ALJ's Unfavorable Decision, thereby making it the decision of the Commissioner and the Social Security Administration.

## Statutory and Regulatory Standards

For the Commissioner to find that an individual under the age of 18 is disabled, the relevant statute requires the individual to have a physical or mental impairment, or combination

of impairments, that results in marked and severe functional limitations, and that have lasted, or can be expected to last for a continuous period of not less than 12 months or can be expected to result in death. 42 U.S.C. § 1382c(a)(3)(C)(i). Additionally, an individual that is engaging in substantial gainful activity ("SGA") is not considered disabled under the statute. 42 U.S.C. § 1382c(a)(3)(C)(ii).

The regulations set forth a three-step sequential evaluation process to determine whether an individual under age 18 is disabled. 20 C.F.R. §§ 416.924(a-d). At step one, the Commissioner determines whether the child is engaging in SGA. 20 C.F.R. §§ 416.924(a-b). At step two, the Commissioner determines whether the child has a medically determinable impairment or combination of impairments that are severe. 20 C.F.R. §§ 416.924(a), (c). At step three, the Commissioner determines whether the child has an impairment or combination of impairments that meets, medically equals, or functionally equals the listings. 20 C.F.R. §§ 416.924(a), (d), 416.926a. An impairment causes the "marked and severe functional limitations" required in the relevant statute if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings. *See* 42 U.S.C. § 1382c(a)(C)(i); 20 C.F.R. § 416.924(d).

### The ALJ's Application of the Three-Step Sequential Evaluation Process

At step one in the appropriate three-step sequential analysis, the ALJ determined that R.L.K. had not engaged in SGA (Doc. 7, p. 23). At step two, the ALJ found that R.L.K. had the following combination of severe impairments: mixed receptive-expressive language disorder, hypertension, and congenital nephrotic disease with anomalies of the urinary system, proteinuria, and renal dysplasia (Doc. 7, pp. 23-24). At step three, the ALJ determined that R.D. did not have

an impairment or combination of impairments that met, medically equaled, or functionally equaled the listings (Doc. 7, pp. 23-27). Regarding functional equivalence, the ALJ explained that to "functionally equal" the listings, R.L.K.'s impairments must result in an "extreme" limitation in at least one domain or "marked" limitation in at least two of six domains, or broad areas of functioning intended to capture all of what a child can and cannot do (Doc. 7, p. 25); s*ee also* 20 C.F.R. §§ 416.926a(a) and (d). A marked limitation "interferes seriously" and an extreme limitation "interferes very seriously" with an individual's ability to independently initiate, sustain, or complete activities (Doc. 7, p. 25); *see also* 20 C.F.R. §§ 416.926a(e)(2-3). The ALJ found that R.L.K. had a "less than marked limitation" in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and health and physical well-being (Doc. 7, p. 25). The ALJ determined that R.L.K. had no limitation in the domains related to moving about and manipulating objects and caring for himself (Doc. 7, p. 25). Accordingly, the ALJ concluded that R.L.K. was not disabled and, therefore, not eligible for SSI since August 2020 when Plaintiff filed the SSI application on R.L.K.'s behalf (Doc. 7, p. 28).

  As noted, Plaintiff does not argue that this finding was error. Instead, Plaintiff argues that the Appeals Council improperly refused to accept review based on submission of the ASD evaluation report from University of Mississippi Medical Center dated May 2, 2022 (approximately 1 month after the ALJ decided Plaintiff's case), and which formally diagnosed the infant claimant as having ASD. The report appears in the certified administrative record as a non-exhibited submission (Doc. 7, pp. 37-40)

  Plaintiff contends – and the Commissioner agrees – that the relevant regulation, 20 C.F.R. § 404.970(a)(5), explains that the Appeals Council accepts review based on submission of additional evidence, but only if the evidence is question is "new, material, and relates to the

period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." *See id*. However, the Commissioner contends that the plaintiff has failed to establish that all these regulatory criteria were satisfied, and therefore she has failed to identify an error requiring remand. *See* Def.'s Br. at 2; *see also Knight v. Kijakazi*, No. 4:21-cv-152-JMV, 2022 WL 2813727, at *6 (N.D. Miss. July 18, 2022) (explaining the claimant failed to meet her burden of showing that additional evidence submitted to the Appeals Council satisfied all the criteria in 20 C.F.R. § 404.970(a)(5)).

## Discussion

For the reason discussed below the court finds that the subject report was made about one month after the ALJ's decision and thus it is new, and though new, I find the report, including the formal ASD diagnosis made therein, does relate to the period at issue. However, Plaintiff has not demonstrated – and the court does not find - that had the report been considered, it is reasonably probable that the decision would have been different.

As defined by the Supreme Court, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 669 (1984). "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). This construction is followed in the Fifth Circuit. *See Mejia v. Davis*, 906 F.3d 307, 314-15 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1229 (2019); *see also Artis v. Kijakazi*, No. 3:21CV13-DAS, 2022 WL 704205, *4 (N.D. Miss. Mar. 8, 2022) (explaining that the court "must look at the strength of the later submitted to determine if . . . the new evidence created a substantial likelihood of a different result").

For my finding I note that the record reflects, and the ALJ recognized in his decision, that on or about June 2021, Plaintiff was determined by her therapist to be a high risk for autism based on the Modified Checklist for Autism in Toddlers, Revised (M-CHAT-R). Accordingly, a referral to Occupational Therapy, Speech Therapy, Physical Therapy and DEVELOPMENTAL PEDIATRICS was made at that time. Plaintiff was however apparently not seen for that formal evaluation until May 2, 2022, shortly after the ALJ's decision, and was only then formally diagnosed with ASD. The report explained that the assessment was based on the same Modified Checklist for Autism in Toddlers, Revised that the claimant had already been evaluated under for ASD in June 2021. Again, she scored as a high risk of ASD, and was formally assessed with ASD and as meeting the DSM-5 criteria for ASD due to persistent deficits in social communication and social interaction and restricted, repetitive patterns or behaviors, interests, or activities (Doc. 7, p. 34). The plan and recommendation suggested for Plaintiff in May 2022 was to continue her current speech therapy services to target speech/language delays but to increase from once per week to at least 2 days per week if possible and to continue current occupational therapy services to target fine motor, sensory processing, and/or play skills deficits on the same increased schedule if possible (Doc. 7, p. 35).

As stated above, in my view, the Appeals Council did err in finding that the subject report did not relate to the period at issue. On the contrary, the symptoms evaluated in the "new" report were essentially the same ones addressed in the infant's various medical visits, including the one finding the infant to be a high risk of ASD for which he was referred for various weekly therapies prior to the date the ALJ rendered his Unfavorable decision on March 28, 2022 (Doc. 7, p. 15). On the other hand, the fact that the symptoms and therapies discussed in the May 2, 2022, report were essentially cumulative of those already observed in and prescribed for the

plaintiff prior to the date of the ALJ's decision is counter to finding that there is a reasonable probability that the report would change the outcome of the decision. While it is accurate that the actual diagnosis of ASD did not occur until the May 2, 2022, evaluation report, the record, as discussed, reflects that it was already being treated for. Further, it is settled law that the mere presence of a diagnosis is not disabling per se. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). And, while Plaintiff's counsel argues this new report "sheds light on important functional limitations and aspects of Plaintiff's condition that clearly relate to the period at issue, and there is a reasonable probability that this report would alter the ALJ's decision", I find respectfully that this is nothing more than a conclusory statement. "Shedding light" on something does not equate to a reasonable probability that it would have resulted in a different decision in this case. Indeed, it appears that the only specific information in the new report on which Plaintiff relies for the assertion that it would have, with reasonable probability, resulted in a different decision is that the report recommended increasing the infant's *existing* therapies from once a week to twice a week "*if possible*".

On the other hand, to demonstrate the essentially cumulative nature of the information in the new report, the Commissioner explains:

> For example, the 3-page-report [in 5/2022] mentions deficits in social communication and social interaction, and the ALJ considered similar evidence from Ms. Howard, including a diagnosis of moderate mixed receptive and expressive language disorder (Doc. 7, pp. 23-24, 26-27, 38, 668-73). The ALJ also considered that June 2021 testing showed R.L.K. had poor to very poor receptive language, expressive language, and language ability ratings (Doc. 7, pp. 27, 894). The 3-page-report mentions disruptive behavior and deficits in "fine motor, sensory processing," and play skills, and the ALJ considered similar evidence from Ms. Guntharp and Ms. Vance, who observed auditory sensitivity, functional play difficulty, emotional regulation difficulty, and decreased engagement and social skills (Doc. 7, pp. 27, 38-39, 903, 920-21). Plaintiff emphasizes the need for speech and occupational therapy mentioned in the 3-page report, arguing needing therapy supports greater limitations than the ALJ found (Pl.'s Br. at 6-7), but this argument overlooks that the ALJ considered that R.L.K. was receiving such therapy, and Ms. Vance described R.L.K.'s progress as "good" with him "making slow but steady

progress towards OT goals" in September 2021 (Doc. 7, pp. 23-27, 669-70, 764, 904, 922).

## Conclusion

In short, I find that although the council erroneously concluded that the May 2, 2022, report did not relate to the relevant period, that report does not support finding an extreme limitation in at least one domain or marked limitation in at least two domains. Thus, despite the diagnosis of ASD, the report does not create a probable different decision by the ALJ for the relevant period, and, therefore, does not warrant remand. The decision on appeal is affirmed.

**SO ORDERED**, this the 4th day of May, 2023.

/s/ Jane M. Virden_____
**United States Magistrate Judge**